PEDRO MORALES PETERSON, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. DOMINGO RAFFUCCI, JUEZ, demandado; RALLY MOTORS, INC., interventora.

*Número:* O-73-266          *Resuelto:* 19 de septiembre de 1975

*Enrique Ramírez Moll* e *Iván L. Pagán Hernández,* abogados del peticionario; *Daniel Pernas Beceiro,* abogado de la interventora.

PER CURIAM: En mayo de 1970 el peticionario le compró un automóvil a Santa Fe Dealers, que luego pasó a hacer negocios como Rally Motors. Meses más tarde, Benjamín Acosta, Inc., le informó al peticionario que el referido vehículo le pertenecía por subrogación a su principal, una compañía de seguros, por haber sido hurtado, y que dicha compañía le había encomendado la recuperación de la unidad robada. El peticionario le entregó el vehículo a Benjamín Acosta, Inc., y acto seguido dedujo demanda por daños contra la compañía de seguros propietaria y contra la compañía vendedora del automóvil. La propietaria instó a su vez demanda de coparte contra la vendedora, solicitando que ésta le indemnizase por cualesquiera daños que la propietaria tuviera que pagarle al peticionario.

En las contestaciones se negaron diversas alegaciones de la demanda y se expuso como defensa afirmativa, entre otras, la contención de que el peticionario le entregó voluntariamente el vehículo a la propietaria.

El peticionario radicó luego una moción de sentencia sumaria, señalando que no existe controversia sobre ningún hecho material y que por tanto debía resolverse interlocutoriamente la cuestión de responsabilidad, dejando para juicio en su fondo la cuantía de los daños.

Tras la vista correspondiente, el tribunal dictó una Sentencia Interlocutoria Parcial ordenándole a la vendedora a consignar en el tribunal la suma de $2,193.73, aceptada como

satisfecha por el peticionario a la vendedora. Declaró a la vez sin lugar, en resolución aparte, la moción de sentencia sumaria por estimar que existía genuina controversia de hechos en cuanto a quién, si alguien, había incurrido en responsabilidad con respecto al peticionario.

La vendedora solicitó la reconsideración de la primera resolución y el peticionario se querelló igualmente en cuanto a la segunda por estimar que no existe controversia sobre los hechos y que es la propietaria quien debe consignar la suma de referencia. Tras la celebración de otra vista, el tribunal relevó a la vendedora de hacer el depósito, considerando que la posición asumida por el peticionario la ha exonerado de toda responsabilidad en daños, y no estimó necesario exigirle depósito alguno a la propietaria. Se reafirmó el tribunal igualmente en su denegatoria de la moción de sentencia sumaria. Expedimos *certiorari* para revisar dicha resolución.

■ El Art. 59 del Código de Comercio, 10 L.P.R.A. sec. 1154, dispone:

"La compra de mercaderías en almacenes o tiendas abiertos al público, causará prescripción de derecho a favor del comprador respecto de las mercaderías adquiridas, quedando a salvo en su caso, los derechos del propietario de los objetos vendidos para ejercitar las acciones civiles o criminales que puedan corresponderle contra el que los vendiere indebidamente."

La venta de cosa ajena es perfectamente válida en el Derecho Mercantil Español, como lo era en tiempos romanos. 3 Langle y Rubio, *Manual de Derecho Mercantil Español*, Barcelona, 1959, pág. 189; Garrigues, *Tratado de Derecho Mercantil*, t. III, vol. 1°, Madrid, 1963, pág. 251. La prescripción de derecho que provoca es instantánea, adquiriendo el comprador de buena fe inmediatamente un título válido. "El fundamento de esta prescripción", señala Gay de Montellá, "es la necesidad de asegurar la vida del comercio mediante el amparo de la posesión de las cosas compradas de buena fe en los almacenes o tiendas abiertos al público. . . ." 1 Gay de Montellá, *Código de Comercio Español* 353. "Las exigencias de la segu-

ridad del tráfico [comercial] justifican", afirma Uría, "esta desviación de la regla civil, que permite al propietario reivindicar la cosa de quien la posea." Uría, R., *Derecho Mercantil*, Madrid, 4ª ed., 1964, pág. 460.

■ En Derecho Mercantil, el verdadero dueño de un bien hurtado no tiene derecho a su reivindicación en casos como el presente, ni siquiera a importunar al comprador de buena fe o a inquietarlo con la pretensión de impugnar la eficacia del contrato. Langle y Rubio, *El Contrato de Compraventa Mercantil*, Barcelona, 1958, págs. 147–8. Sus remedios son los que decreta el Código, ejercitar las acciones civiles o criminales que puedan corresponderle contra quien vendió la mercancía indebidamente. Uría, *loc. cit.* Para la situación bajo el Derecho Civil, cuando el vendedor no tiene tienda o almacén abierto al público, véase a *Fuentes* v. *Fulano de Tal*, 84 D.P.R. 506 (1962) y para el caso contrario consúltense los Arts. 393 y 1855 del Código Civil, 31 L.P.R.A. secs. 1479 y 5276.

■ Respecto a la relación entre un vendedor de bienes hurtados y un comprador de buena fe a quien se le quita la propiedad de los mismos, el vendedor responde naturalmente por su saneamiento. Arts. 1351 y 1363 *et seq.* del Código Civil, 31 L.P.R.A. secs. 3801 y 3831 *et seq.* El derecho al saneamiento no surge, sin embargo, hasta que se decreta la evicción por sentencia firme. Art. 1364 del Código Civil, 31 L.P.R.A. sec. 3832.

A pesar de la claridad de las normas jurídicas que gobiernan los derechos del dueño original, del vendedor y del comprador de buena fe de bienes hurtados, las alegaciones en su estado presente no permiten, como resolvió el tribunal de instancia, la emisión de una sentencia sumaria parcial. Ni de la demanda ni de la moción de sentencia sumaria interlocutoria se desprende que la compra se efectuó en un almacén o tienda abierta al público, dato indispensable para la aplicación del Art. 59 del Código de Comercio, cuya prueba le co-

rresponde al comprador. *Sosa* v. *Cardona*, 30 D.P.R. 274 (1922). No se ha establecido tampoco en las alegaciones el derecho al saneamiento por evicción mediante sentencia, si es que se desea optar por este remedio.

En vista de lo expuesto anteriormente y del estado incompleto de las circunstancias en que ocurre la entrega alegadamente voluntaria del automóvil, no es necesario en esta etapa del caso analizar de lleno el efecto del modo de la entrega. Cabe señalar, no obstante, que existe una vital distinción entre el pago de lo indebido—figura jurídica cuya aplicación a este caso no es clara—y la celebración de un contrato sin causa. León Hurtado, A.: *La Causa*, 1961, pág. 53. Aun de concebirse, no obstante, que la entrega se hiciese por error de derecho, habría que sopesar la opinión de Manresa, Castán y otros distinguidos comentaristas, quienes entienden que no procede establecer diferencias respecto a la naturaleza del error que motiva el pago de lo indebido y que se aplican a tal situación, de todos modos, los Arts. 1795 a 1797, inclusive, de nuestro Código Civil, 31 L.P.R.A. secs. 5121–5123, equivalentes a los Arts. 1895 a 1897 del Código Civil Español. 12 Manresa, *Comentarios al Código Civil Español*, 6ª ed., 1973, págs. 814 *et seq.;* 4 Castán, *Derecho Civil*, 1969, págs. 819–820; Sentencia de julio de 1950 (Esp.); Sentencia de 21 de noviembre de 1957.

Por los fundamentos que anteceden, *se confirmará la resolución del tribunal de instancia y se devolverá el caso para la continuación de procedimientos conformes a esta opinión.*

El Juez Asociado Señor Irizarry Yunqué concurre con el resultado.